Alfred V. EMMANUEL, Plaintiff,

v.

OMAHA CARPENTERS DISTRICT COUNCIL, a Labor Organization, Defendant.

Civ. No. 72–0–463.

United States District Court,
D. Nebraska.

Oct. 20, 1976.

Supplemental Memorandum Nov. 16, 1976.

Thomas F. Dowd, Omaha, Neb., for plaintiff.

Robert E. O'Connor, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

This matter is before the Court upon the mandate of the Court of Appeals for the Eighth Circuit reversing the Court's judgment and remanding this cause for proceedings consistent with the Eighth Circuit's opinion [Filing # 64].[1]

The relevant facts as found by the Eighth Circuit may be summarized as follows. Plaintiff, Alfred V. Emmanuel, instituted this § 301 action against Omaha Carpenters District Council for breach of fair representation on November 3, 1972, pursuant to 29 U.S.C. § 185.

In the fall of 1971, Emmanuel worked as a carpenter for Western Fixture for one week. On February 20, 1971, Dan Harf, a job superintendent for Western Fixture, gave Emmanuel a letter pursuant to the Hiring Hall agreement with the Union, requesting the Union to refer Emmanuel to work for Western Fixture.

On February 23, 1971, Art Deseck, the Union's business agent, met with Harf and William Silverman, the president of Western Fixture. At that meeting, Deseck demanded that Western Fixture employ a local foreman. Harf countered with a complaint of shortage of carpenters and requested that Emmanuel and another carpenter, Coco, be sent to work. Deseck refused and Silverman then stated: "Well, we are not going to put on a foreman because we are not required to, but we will go along, we won't make any written request for men." The Eighth Circuit characterized this statement as a compromise satisfactory to all.

Thereafter, Harf notified Emmanuel that he could not use the written request he had previously received because of this agreement or compromise.

On February 28, Emmanuel registered with the Union and Harf telephoned a request to Deseck to send Emmanuel. Deseck refused, insisting on a written request, and Western Fixture refused to send a written request in light of the compromise agreement. Emmanuel did not work for Western Fixture during the remaining 10 weeks of the project.

The Eighth Circuit concluded that Western Fixture's failure to submit a written request for Emmanuel may have been the result of the compromise agreement. If it was, then the Union violated its duty of fair representation. This Court did not decide that issue, and the Eighth Circuit therefore reversed and remanded the case for "determination of the scope and effect of the agreement between Silverman and Deseck. It may do so on the basis of the existing record or on the basis of a supplemented record." 535 F.2d at 424.

Following the mandate of the Eighth Circuit, plaintiff submitted a motion for judgment on June 22, 1976. Oral argument was heard before the Court on July 30, 1976, during which this Court acceded to defendant's request to depose or obtain an affidavit of William Silverman. The Court granted defendant "until August 15, 1976, to inform the Court of the success of its efforts in locating Silverman for the purpose of taking of deposition or affidavit." [Filing # 72]. Upon defendant's failure to timely respond to the Court's Order, plaintiff submitted an affidavit of Silverman wherein he testified as follows:

That although Alfred V. Emmanuel had performed his work well for this Company and we were desirous of re-employing him, we were unable to do so solely because of the agreement reached with Art Deseck that we would not make any written request for specific carpenters in consideration of our not having to employ a local foreman. We were also unable to employ Alfred V. Emmanuel directly without utilizing the Union's hiring hall, since we had previously agreed with the Union to use their hiring hall exclusively for the employment of local carpenters. [Filing # 73].

---

1. The decision of the Eighth Circuit is reported at 535 F.2d 420.

The Court thereafter granted defendant an additional six weeks in which to file counter-affidavits or depositions [Filing # 77].

On September 17, 1976, the defendant took the deposition of Silverman, to no avail. Silverman testified to the same effect as his affidavit:

> After we had talked I went over and told Dan Harf that all hiring would be done directly through the hall per the Union agreement and no requests would be given to anyone.

> He told me, "Gee, I had already given a request," and I didn't know what the time span or when he gave it to Emmanuel. I told him, "You get that goddamn thing back now because I just made a deal with someone and we're going to adhere to it." And that's what actually transpired. (21:10–19).

Once again, upon motion of defendant, the Court granted a further two week extension of time in which to submit additional affidavits. Affidavits were then submitted on October 15, 1976. The affidavits, however, rather than complying with the Court's Order of August 4, 1976, which limited additional evidence to the scope and effect of the compromise agreement, attempt to litigate new issues and relitigate issues previously decided by the Eighth Circuit.

Sam Short, President of the Omaha Carpenters' District Council of Omaha, Nebraska, testified that plaintiff "has not attempted to institute any internal procedure against Arthur Deseck or any other officer or business representative regarding any incident which occurred in February 1972, prior to this date." Short testified that procedures were instituted by plaintiff on October 8, 1976, and that these charges are properly placed with the District Council [Filing # 94].

■ Defendant has not briefed this point nor has it raised it during oral argument, but it appears that the Short affidavit is intended to raise the defense of internal union remedies. "Where . . . there is no question as to the adequacy and mandatory nature of the intra-union remedies it is well settled that an exhaustion of the remedies is an indispensible prerequisite to the institution of a civil action against a union." *Newgent v. Modine Mfg. Co.*, 495 F.2d 919, 927 (7th Cir. 1974). *See also Imel v. Zohn Mfg. Co.*, 481 F.2d 181, 183–84 (10th Cir.), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1973); *Buzzard v. Local Lodge 1040*, 480 F.2d 35, 41 (9th Cir. 1973); *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 104–05 (3rd Cir. 1968), *cert. denied*, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969). The Court has reviewed the Constitution and Laws of the United Brotherhood of Carpenters and Joiners of America and does not find any explicit formal appeal procedures which affords relief such that plaintiff should be required to pursue it. Section 57 concerns appeals by members expelled, suspended or fined. Section 56 governs trials of members charged with "offenses" under Section 55, and is likewise not a bar to plaintiff's civil suit as it does not provide plaintiff relief. This Court accepts the reasoning of the Seventh Circuit Court of Appeals in *Orphan v. Furnco Construction Corp.*, 466 F.2d 795, 801–802 (7th Cir. 1972):

> Rather, this article provides for criminal-type prosecutions against Union members and officers charged with specified offenses. If, after "trial" the accused is found "guilty" of an offense, he is "punished by fine, reprimand or suspension." This is not the explicit appeal procedure "definitely available" to Union members that existed in *Neal [v. System Bd. of Adjustment]*, 348 F.2d [722] at 726 [8 Cir.]. Contrary to the situation in that case, it would appear unreasonable to expect the plaintiffs to have first sought relief against the Union's failure to process the grievance through Article X or to have alleged such attempt.

The additional affidavits submitted by defendant attempt to challenge the Court of Appeal's finding that there ever existed a compromise agreement. Defendant, in its brief on petition for rehearing and suggestion of rehearing, argued that the Eighth Circuit "substituted its finding of fact for

the finding of fact of the district court." [Appellee's Brief, p. 4]. Defendant further argued that, at a minimum, resolution of the issue of an agreement should be left for future proceedings in the district court. "The district court clearly found there was no evidence of agreement. If that decision was wrong, the parties should be given the opportunity to supplement the record with evidence on the question of whether or not an agreement was in fact made." [Appellee's Brief, p. 9]. The Eighth Circuit denied defendant's petition for rehearing and it would indeed be a usurpation of the Appellate Court's authority for this Court to now entertain defendant's arguments.

This Court has been patient in providing defendant with ample opportunity to aid the Court in its determination as to the scope and effect of the Silverman-Deseck Agreement. Although the Eighth Circuit stated that this Court could make that finding on the basis of the present record, defendant was granted permission to submit affidavits or take depositions.[2]

■ On June 18, 1975, the parties stipulated that the matter be submitted to the Court for judgment on the merits on the basis of the record. Defendant now argues that the stipulation was entered into under a mistake of law and that this Court should relieve it of the stipulation. The Court considers itself wholly without power to nullify or to deprive one party of the effect of a stipulation. *See American Chemical Paint Co. v. Dow Chemical Co.*, 164 F.2d 208, 209 (6th Cir. 1947). Although trial by jury is not to be lightly substituted with trial by affidavit, the parties, by and through competent counsel, waived their right to a jury and agreed to submit the matter on the record.

The Eighth Circuit remanded this cause for proceedings consistent with its opinion. Defendant's entire argument is premised upon the supposition that this court should commence proceedings inconsistent with the Eighth Circuit's mandate. This convoluted litigation has been a "comedy of errors," perhaps by the parties and perhaps by this Court. If error was committed by the Eighth Circuit, defendant's remedy lies therein. A "comedy of errors" is a tragedy of errors to litigants who wait patiently for the oftentimes slow wheels of justice to turn.

■ The Court finds that Western Fixture's failure to submit a written request for Emmanuel or to hire him directly was the direct result of the Silverman-Deseck agreement that no written requests would be made for carpenters on the job if the Union waived its right to have a Union foreman on the job. Accordingly, judgment shall be entered for plaintiff.

The aforementioned shall consist of findings of facts and conclusions of law in accordance with Rule 52, Fed.R.Civ.P.

## SUPPLEMENTAL MEMORANDUM

This matter is before the Court upon plaintiff's request for compensatory and punitive damages and attorney fees, subsequent to hearing before the Court on October 29, 1976. In accordance with Rule 52, Fed.R.Civ.P., the Court makes the following additional findings of facts and conclusions of law.

### I. THE COURT OF APPEALS MANDATE

Initially, defendant contends that because Emmanuel argued that he was entitled to compensatory damages, punitive damages of $50,000.00 and reasonable attorney fees before the Eighth Circuit, this Court is bound by the "mandate rule" to deny plaintiff's requested relief.

■ When a case is remanded to the District Court, the limits of its authority are set by the mandate of the Court of Appeals. *Briggs v. Pennsylvania RR. Co.*, 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948); *Kansas City So. R. Co. v. Guardian*

---

**2.** The existing record was ample to find for plaintiff upon remand. See Dan E. Harf deposition [33:19–21; 35:20–36:2].

*Trust Co.*, 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659 (1930); *Paull v. Archer-Daniels Midland Co.*, 313 F.2d 612, 617–618 (8th Cir. 1963); *Hartman v. Lauchli*, 304 F.2d 431, 432–433 (8th Cir. 1962); *Thornton v. Carter*, 109 F.2d 316, 319–320 (8th Cir. 1940).

The Eighth Circuit remanded this case with instructions to the District Court as follows:

> [The District Court shall] determine the scope and effect of the agreement between Silverman and Deseck.  .  .  . If it decides that Western Fixture failed to hire Emmanuel directly or failed to request in writing that he be dispatched to the Union because of the Silverman-Deseck agreement, then the District Court must enter judgment in favor of Emmanuel.  If it decides to the contrary then the matter shall be dismissed.  *Emmanuel v. Omaha Carpenters District Council*, 535 F.2d 420, 424 (8th Cir. 1976).

"While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." *Sprague v. Ticonic Bank*, 307 U.S. 161, 168, 59 S.Ct. 777, 781, 83 L.Ed. 1184 (1939).  The Court of Appeals remanded this case for further findings of facts.  Unlike *Kansas City So. R. Co. v. Guardian Trust Co., supra*, the decree did not require judgment for plaintiff and therefore did not encompass attorney fees, punitive damages, or compensatory damages.  Although these matters were presented to the Court of Appeals, the issues were not dealt with since summary judgment was, in the view of the Court of Appeals, improperly granted.  The silence of the Eighth Circuit as to appropriate relief, contrary to defendant's contention, is not dispositive of the issues.

## II.  COMPENSATORY DAMAGES

■   The Court finds, upon the affidavits and depositions, that if Emmanuel had been referred to Western Fixture as requested on February 28, 1972, he would have worked 40 hours per week for a total of 320 hours.  Considering Emmanuel's mitigation of his damages by obtaining other employment from March 2, 1972, until April 2, 1972, plaintiff has proven compensatory damages amounting to $1,093.94 as a direct result of the Silverman-Deseck agreement.

## III.  PUNITIVE DAMAGES

■   Although certain § 301 lawsuits undoubtedly present proper cases for the imposition of punitive damages to deter future misconduct, such damages are not proper in cases which lie "in the mainstream of unfair representation litigation." *Butler v. Local Union 823*, 514 F.2d 442, 454 (8th Cir. 1975).

> [Emmanuel] was not subjected to threats of violence, harassment, physical abuse, or the scorn and ridicule of his co-workers, and there was no showing that the Local acted with any malice directed specifically at him.  *Compare Richardson v. Communication Workers of America*, 443 F.2d 974, 983 n. 12 (8th Cir. 1971).  The federal courts should fashion remedies under the labor statutes which are necessary to achieve the goal of industrial peace.  *Textile Workers of America v. Lincoln Mills*, 353 U.S. 448, 454–455, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).  The plaintiff [has] not established that punitive damages [are] needed to deter future misconduct [1] or to prevent industrial strife.  (Footnote omitted).

*Butler v. Local Union 823, supra.*

As in *Butler*, plaintiff has not shown that any malice was directed specifically at him.  In fact, the contrary appears.  The Silverman-Deseck agreement was not directed at Emmanuel, but was a dishonest attempt of Omaha Carpenters District Council to require Western Fixture to utilize their hiring hall for men because of the amount of carpenters on the out-of-work list.

Plaintiff, relying upon *Harrison v. United Transportation Union*, 530 F.2d 558 (4th Cir. 1975), *cert. denied* 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976), contends that punitive damages are proper in every § 301 lawsuit when *de minimis* compensatory

---

1.  The record is devoid of any evidence which would indicate that the District Council persists in a policy of disregarding collective bargaining agreements.

damages are an insufficient deterrence of future misconduct. Plaintiff reads *Harrison* too broadly. The Fourth Circuit held therein that "[u]nless punitive damages are available, an employee may lack the strong legal remedy necessary to protect his right against a union which has either *maliciously* or in *utter disregard of his rights* denied him fair representation," 530 F.2d at 563, (emphasis supplied), and stated as follows:

> In telling the jury that it might award punitive damages if it found UTU acted wantonly or maliciously or that it acted recklessly or in callous disregard of Harrison's rights or that Harrison's rights were disregarded with unnecessary harshness or severity, the trial court gave unexceptionable instructions. *Id.* at 563–64.

*See also Cooke v. Orange Belt District Council of Painters No. 48,* 529 F.2d 815, 820 (9th Cir. 1976); *Bond v. Local Union 823,* 521 F.2d 5, 9–10 (8th Cir. 1975); *Holodnak v. Avco Corp.,* 514 F.2d 285, 291–293 (2nd Cir. 1975).

### IV. ATTORNEY FEES

In *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court recognized certain exceptions to the "American rule" that attorney fees are not ordinarily recoverable by the prevailing party in federal litigation absent statutory authorization. These exceptions include when a party preserves or recovers a fund for the benefit of others in addition to himself or "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 258–59, 95 S.Ct. at 1622, quoting from *F. D. Rich Co. v. United States ex rel. Indus. Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). For the reason that a fee award under the "bad faith" exception is only proper in "the class of exceptional cases warranting the allowance of fees as a punitive measure," *Noranda Aluminum Inc. v. United Brotherhood of Carpenters,* 528 F.2d 1304, 1310 (8th Cir. 1976), the Court must reject Emmanuel's attempt to bring himself within this exception.

■ Nonetheless, the Court deems an award of attorney fees to Emmanuel proper under the "common fund" rationale. Plaintiff's successful litigation, although not a class action,[2] has conferred " 'a substantial benefit on the members of an ascertainable class, and . . . the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.' "[3] *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 393–394, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). In *Mills v. Electric Auto-Lite Co., supra,* the Supreme Court held that the rationale of the "common fund" cases must logically extend, not only to litigation that confers a monetary benefit on others, but also to litigation " 'which corrects or prevents an abuse which would be prejudicial to the rights and interests' " of others. 396 U.S. at 396, 90 S.Ct. at 627, *quoting Bosch v. Meeker Cooperative Light & Power Assn.,* 257 Minn. 362, 366–367, 101 N.W.2d 423, 427 (1960). Emmanuel's lawsuit should prove a substantial impetus to union fair play and honesty and should prove beneficial "not only in the immediate impact of results achieved but in [its] implication for the future conduct of the union's affairs." *Yablonski v. United Mine Workers of America,* 151 U.S.App.D.C. 253, 466 F.2d 424, 431 (1972). As in *Mills* and *Hall,* the reimbursement of plaintiff's attorney's fees out of the union treasury simply shifts the costs of litigation to "the class that has benefited from them and that would have had to pay

---

**2.** The litigation need not be a technical class action in order to come within the common fund rationale. *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

**3.** Defendant contends that the payment of counsel fees out of the union treasure will de-

plete funds and require a special assessment of the members [Moody affidavit, Filing # 101]. This consideration is relevant to the amount of fees the court shall award, not to the exercise of the Court's power to award fees. *Cf. Hall v. Cole,* 412 U.S. at 9, n. 13, 93 S.Ct. 1943.

them had it brought the suit." *Mills v. Electric Auto-Lite Co., supra*, 396 U.S. at 397, 90 S.Ct. at 628. The union members undoubtedly benefit when the terms and conditions of collective bargaining agreements are strictly followed, enforced and not traded away without proper authorization as was done in this case by the union's business agent.[4]

Although this case is not a technical class action, defendant contends that because plaintiff seeks both compensatory and punitive damages from a fund created by the union for the benefit of the members, he has created a conflict between his interest and that of the union members and cannot claim to be acting on behalf of the union members. *Cf. Hansberry v. Lee*, 311 U.S. 32, 45, 61 S.Ct. 115, 85 L.Ed. 22 (1940); 3B *Moore's Federal Practice*, § 23.07[3], 23–401, 23–402. While the Court acknowledges counsel's ingenuity, a prayer for punitive damages is not antagonistic to the interests of the union members. Punitive damages may be necessary in appropriate cases to deter future misconduct. Since the deterrence of future misconduct inheres to the benefit of all union members, punitive damages may be in the interests of the class as well.

Plaintiff's application to the Court is for an award of attorney fees in the amount of $34,200.00 based upon the rate of $90.00 per hour for 380 hours of legal service. The Court has carefully reviewed the voluminous court file and briefs submitted by plaintiff's counsel throughout the course of this prolonged litigation and considers a fair and reasonable award based on the guidelines listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974), to be for the amount of $20,375.00.

Judgment shall be entered accordingly.

---

4. Defendant's contention that the benefit to the union membership is negligible since Article XV(d)(1) of the Collective Bargaining Agreement, which Emmanuel attempted to invoke, is seldom used by contractors because of the existence of Article XV(c) which permits direct hiring of individuals previously employed by the contractor [Moody Affidavit, Filing # 101], takes too restrictive a view of the impetus of this litigation. The benefit of this lawsuit should inure to all members of the union since this litigation should prove a deterrence to modifying the collective bargaining agreements by agreement between business agents and employers.