Alfred V. EMMANUEL, Appellee and Cross-Appellant,

v.

OMAHA CARPENTERS DISTRICT COUNCIL, a Labor Organization, Appellant and Cross-Appellee.

Nos. 76–2116, 76–2126.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1977.

Decided Aug. 8, 1977.

Robert E. O'Connor, Omaha, Neb., for Omaha Carpenters; Robert E. O'Connor, Jr., Omaha, Neb., on brief.

Thomas F. Dowd, Omaha, Neb., for Emmanuel.

Before GIBSON, Chief Judge, and HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

This matter is before the Court for a second time. In our initial decision, we held that Arthur Deseck, business agent of the Omaha Carpenter's Union, and William Silverman, President of Western Fixture, had orally agreed that Western Fixture would not submit written requests for carpenters and, in return, the Union would not insist that Western Fixture employ a local Union foreman. We held that the arrangement was contrary to the collective bargaining agreement between the Union and Western Fixture and instructed the trial court to decide whether Western Fixture's failure to hire Emmanuel was caused by the Silverman-Deseck agreement. If it was, the trial court was directed to enter judgment in

favor of Emmanuel. *Emmanuel v. Omaha Carpenters Dist. Council,* 535 F.2d 420 (8th Cir. 1976). We remanded the matter to the District Court and instructed it to answer the question posed.

On remand, the District Court denied Union attempts to introduce evidence on whether Deseck and Silverman had entered into the agreement described above. It did, however, permit additional affidavits and depositions to be filed by the parties on the scope and effect of the agreement. The District Court found that:

> Western Fixture's failure to submit a written request for Emmanuel or to hire him directly was the direct result of the Silverman-Deseck agreement that no written requests would be made for carpenters on the job if the Union waived its right to have a Union foreman on the job.

*Emmanuel v. Omaha Carpenters District Council,* Civ.No. 72–0–463, 422 F.Supp. 204 (D.Neb., filed October 20, 1976).

It directed that judgment be entered for Emmanuel. Thereafter, the District Court heard evidence on Emmanuel's claims for damages and attorney's fees. It awarded Emmanuel $1,093.44 in compensatory damages, but refused to award punitive damages, citing *Butler v. Local U. 823, Int. Bro. of Teamsters, Etc.,* 514 F.2d 442 (8th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975). Also, it awarded attorney's fees under the common fund rationale stating that

> Emmanuel's lawsuit should prove a substantial impetus to union fair play and honesty and should prove beneficial "not only in the immediate impact of results achieved but in (its) implication for the future conduct of the union's affairs."

*Emmanuel v. Omaha Carpenters District Council,* Civ.No. 72–0–463, 422 F.Supp. 204 (D.Neb., filed November 16, 1976), quoting *Yablonski v. United Mine Workers of America,* 151 U.S.App.D.C. 253, 466 F.2d 424, 431 (1972), *cert. denied,* 412 U.S. 918, 93 S.Ct. 2729, 37 L.Ed.2d 144 (1973).

The Union was directed to pay attorney's fees of $20,375 to Emmanuel's counsel.

On appeal, the Union contends that the District Court erred in refusing to permit it to present testimony on the question of whether Silverman and Deseck had in fact entered into an agreement, and in denying its offer of oral testimony on the scope and effect of that agreement. It also argues that if an agreement was in fact made, that agreement was a reasonable exercise of the Union's bargaining authority. It finally asserts that the trial court erred in allowing attorney's fees. Emmanuel cross-appeals contending that the District Court erred in denying his request for punitive damages, and that the evidence warranted a larger attorney's fee. He asks that we increase the award of attorney's fees and that we allow additional fees for services rendered on this appeal.

## I. The Union's Evidentiary Claims

The District Court properly denied the Union's request to introduce evidence on the question of whether Deseck and Silverman made an oral agreement. Our initial decision held that the parties had in fact entered into an agreement. The Union's request for a rehearing en banc to reconsider our decision on that issue was denied on May 26, 1976. No appeal from our decision was taken to the Supreme Court of the United States.

Also, the District Court did not err in refusing to hold an evidentiary hearing on the scope and effect of the agreement. The parties agreed at the outset of the original trial to submit the matter on a stipulated record. The court found no reason to relieve the parties from that stipulation. Consistent with our earlier opinion, it allowed the parties to submit additional affidavits on these issues and permitted the Union to take Silverman's deposition on the issue of the scope and effect of the agreement. His testimony was entirely consistent with his earlier affidavit. In particular, he reaffirmed that Emmanuel was not hired because of his agreement with Deseck.

## II. The Impact of the Agreement

■ The trial court properly held that the effect of the agreement was to deny Emmanuel rights he was entitled to under the collective bargaining agreement. The agreement provides:

(a) The contractor recognizes the Union as the primary source of recruitment for employees covered by this Agreement.

(b) The Union agrees that its selection of applicants for referral shall be on a nondiscriminatory basis, not based on or affected by Union membership, bylaws, rules, regulations, constitution, or any other aspect of Union membership, policies and requirements.

(c) Contractors may hire direct, men who have worked as Carpenters for contractors in the area covered by this Agreement during the previous year, provided that the contractor shall notify the Union of the names of the men so hired.

(d) When the Union is referring applicants, they shall refer them according to the following priority:

(1) Those individuals requested by name who have previously worked for the contractors in the area covered by this Agreement.

(2) Those having at least four years experience in the trade and who have resided in the geographical area of the Union for not less than two years.

(3) Those having at least four years experience in the trade.

(4) All others in order of registration.

(e) The contractor may reject any applicant referred by the Union and if the employer rejects any applicant, he shall notify the Union the date of refusal to hire and the reason for rejection within eighteen hours from the time of rejection.

In the alternative, the Union argues that Sections (c) and (d)(1), which allow contractors to directly hire or specifically request from the Union previous employees, are for the exclusive benefit of the contractor, can be waived by him and were waived here.

The argument has a measure of validity but is overly broad. Sections (c) and (d)(1) are intended both to benefit the contractor by permitting him to hire experienced men who have established a reputation and to benefit the craftsmen themselves by giving them improved opportunity for rehire. The contractor may, of course, hire from the Union hiring hall and, indeed, he may use the hiring hall exclusively; but the choice is his to freely make. The Union may not, consistent with the bargaining agreement, insist that he hire from the Union hall or impose conditions on his right to request former employees or to hire employees directly. Such insistence violates both the collective bargaining agreement and the Union's duty to fairly represent the craftsmen who would otherwise be hired either directly or by request from the hiring hall.

We understand why Deseck asked Silverman to use the hiring hall; he wanted to spread the work among those who had been unemployed for a considerable period of time. The objective was a legitimate one; the means chosen was not.

## III. The Damages Award and Attorney's Fees

■ The District Court did not err in allowing attorney's fees. Although Emmanuel's lawsuit was aimed primarily at vindicating his own right, there can be little doubt that he rendered a substantial service to the Union and the persons it represents by protecting a member's right to be hired directly by an employer or through a specific request to the Union. Emmanuel's lawsuit served to dispel the "chill" cast upon members who might otherwise not take advantage of these special hiring alternatives. See generally *Hall v. Cole,* 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Usery v. Local Union No. 639 Intern. Bro. of Teamsters,* 177 U.S.App.D.C. 222, 543 F.2d 369 (1976); *McDonald v. Oliver,* 525 F.2d 1217 (5th Cir.), cert. denied sub nom. *Longshoremen's Local No. 795 v. McDonald,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976); *Yablonski v. United Mine Workers of America, supra.*

In our view, the fee allowed was very generous. The trial court properly determined the fee based on the reasonable market value of the time and effort spent.[1] *See Linbeck Const. v. Intern. Ass'n of Bridge, Etc.,* 547 F.2d 948, 950 (5th Cir. 1977). We find no abuse of discretion. *Richardson v. Communications Wkrs. of America,* 530 F.2d 126 (8th Cir.), *cert. denied,* 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976). In view of the generous award and because the appellee has not prevailed on all issues, no further allowance will be made for attorney's fees on this appeal.

The District Court did not err in refusing to award punitive damages. Emmanuel has not shown that the Union acted with malice towards him or that the breach of the Union's duty of fair representation was an extraordinary one. *Butler v. Local U. 823, Int. Bro. of Teamsters, Etc., supra* at 454. Moreover, there is no evidence that punitive damages are necessary to deter future violations by the Union. *See Halodnak v. Avco Corp., Avco-Lycoming Div., Stratford,* 514 F.2d 285 (2nd Cir. 1975).

Each party will bear its own costs in this appeal.

---

1. In an article entitled *Lawyers and Involuntary Clients in Public Interest Litigation,* 88 Harv.L. Rev. 849, 913–914 (1975), Professor Dawon writes:

Labor Unions, unlike most corporations, do not as a rule accumulate capital as a base for profitmaking ventures or maintain reserves from which fees can be paid. Current activities of most unions are financed by their members' dues, so that if heavy litigation costs are charged against them there are two main choices: for the union to reduce its activities or for the members to vote an increase in their dues. Furthermore, in most disputes within unions—even those whose compass seems narrow, such as reinstate-ment of a member wrongfully expelled—major changes will seldom come without interaction and collective effort of many union members. The greater the upheaval and the resulting reconstruction, the more this will be true, and if the gains are to be lasting and far-reaching the effort by union members must be longer sustained. It would perverse to say that the fees that union members must pay should increase in proportion to the success of their efforts. If litigation contributes to this success, the lawyers who conduct it should have no claim to more than the reasonable market value of time and effort spent.