**William MINNIS, Appellant,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, et al., Appellees.**

**No. 75–1167.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1975.

Decided Dec. 16, 1975.

Kenneth V. Byrne, St. Louis, Mo., for appellant. Rebuttal by Mr. Byrne.

William L. Massey, Little Rock, Ark., for appellees.

Before BRIGHT, WEBSTER and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

Appellant William Minnis appeals a judgment of dismissal entered after a non-jury trial of his claim for damages against the defendant unions.[1] Minnis' complaint charged the unions with breaching their duty of fair representation to him by failing to adequately prepare and present a grievance against his former employer, General Motors.[2] The principal issue raised on this appeal is whether the district court erred in denying Minnis' timely demand for a jury trial. Secondarily, if Minnis' demand for jury reference should have been honored, we must determine whether he made a submissible case for a jury's consideration.

---

1. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, Local No. 25.

2. General Motors was also a defendant below. After the court found in General Motors' favor, Minnis and the company reached a settlement.

*I. Jury trial.*

■ The seventh amendment guarantees the right to a jury trial in all actions at common law where the value in controversy exceeds twenty dollars. The full scope of this guaranty has been held to encompass

> not merely suits, which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered  *  *  *  In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights. [*Ross v. Bernhard,* 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970); *quoting Parsons v. Bedford,* 3 Pet. 433, 437, 7 L.Ed. 732 (1830).]

The court in *Ross* established three criteria for identifying those issues to which the right to a jury trial applies. These are

> first, the pre-merger custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries. [*Id.* at 538 n. 10, 90 S.Ct. at 738.]

## A. The Pre-Merger Custom.

Obviously, there was no pre-merger custom with respect to an exclusive bargaining agent's duty of fair representation. However, an analogy has been drawn between that cause of action and the traditional common law tort. *See Butler v. Local Union 823,* 514 F.2d 442 (8th Cir. 1975); *Sanderson v. Ford Motor Co.,* 483 F.2d 102, 114 (5th Cir. 1973); *de Arroyo v. Sindicato de Trabajadores Packinghouse, AFL–CIO,* 425 F.2d 281, 286–87 (1st Cir.), *cert. denied,* 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970).[3]

■ A fair representation action also can be characterized as one to enforce a statuto-

ry liability. *Gray v. Insulators Local No. 51,* 416 F.2d 313 (6th Cir. 1969). If deemed an action to enforce a statutory liability, the Supreme Court has said that the seventh amendment right to a jury trial must be observed absent evidence of a contrary congressional intent. *Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974).

> But when Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law. [*Id.*]

## B. · The Remedy Sought.

■ In this case Minnis seeks a traditional legal remedy—compensatory and punitive damages. We recognize that an equity court possesses some discretionary power to award damages in order to do complete justice. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). However, damages resulting from a breach of the duty of fair representation do not fall into a discretionary category but may be recovered as of right. *See Richardson v. Communication Workers of America,* 443 F.2d 974 (8th Cir. 1971). The availability of such damages strongly implies the existence of a right to a jury trial in cases of this kind. *See Curtis v. Loether, supra,* 415 U.S. at 197, 94 S.Ct. 1005; *cf. Albemarle Paper Co. v. Moody, supra,* 95 S.Ct. at 2385–86 (Rehnquist, J., concurring).

## C. The Practical Abilities and Limitations of Juries.

We perceive no reason why a jury properly instructed could not adequately perform its duty of finding the facts and making a damage award where appropriate in an ac-

---

3. In *Butler,* we applied the statute of limitations governing actions on a written contract in order to avoid disparities between the treatment of employers and unions. However,

whether the action is deemed to sound in tort or contract makes no difference for seventh amendment purposes since either form may give rise to a right of trial by jury.

tion for failure to provide fair representation. We note that juries have in fact decided fair representation cases brought by an employee against his union. *See Butler v. Local Union 823, supra; Richardson v. Communication Workers of America, supra.*

Considering the foregoing factors, we hold that plaintiff's case falls within the terms of the seventh amendment. Accordingly, the trial court should have honored Minnis' timely request for a jury trial. Thus, we are obligated to remand for a new trial unless, as the defendant unions argue, Minnis failed to establish any factual basis for a jury verdict and therefore sustained no prejudice. *Cf. Simler v. Conner,* 372 U.S. 221, 222–23, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) (*per curiam*). We now address that issue.

## II. *Evaluation of the Evidence.*

The parties do not dispute the basic facts leading up to Minnis' grievance. Minnis first came to work at General Motors on Thursday, September 10, 1970. He did not work on Friday, the 11th, because he was (or claimed to be) sick. On Saturday, September 12, he went to a doctor who found that he was ill. The doctor filled out a form to this effect, which entitled Minnis to sick leave and pay. On Monday, September 14, the union went out on strike. The strike continued for several months. During that period Minnis received sick pay which was substantially higher than the strike pay received by other workers.

General Motors suspected that many of its employees went on sick leave just prior to the strike in order to qualify for sick leave benefits during the strike. Thus, it closely scrutinized the medical forms submitted by employees to support sick leave claims. The company observed that Minnis' form had been altered in two places to show commencement of illness on September 11, rather than September 12, as originally written on the form. When queried by General Motors, the attending physician denied that he made or authorized the change.

When the strike ended and Minnis returned to work, he was informed that he was discharged for having falsified his medical form. Minnis filed a grievance with his union alleging that the alteration had been made by the doctor's nurse. The union processed the grievance through three steps in the procedure established by the collective bargaining agreement.[4] However, on May 19, 1971, the union informed General Motors that it would not press the grievance through the arbitration procedures still available. The union did not inform Minnis that his grievance had been dropped until November 1971. Minnis' doctor died the following month.

Minnis presented testimony which, if believed, showed an utter failure by the unions to make even a minimal attempt to investigate or process his grievance.[5] He also testified that the form was altered by the doctor's nurse. The nurse corroborated this statement, saying she acted on the doctor's orders. The unions (and then defendant General Motors) disputed Minnis' testi-

**4.** Step one was an informal discussion with Minnis' foreman. Step two was an appeal to a management representative. Step three was a written exchange of views and a conference of union and management representatives. Step four would have been arbitration.

**5.** A detailed statement of his testimony is not necessary to this opinion. Briefly, Minnis testified, with some corroboration, that he had great difficulty persuading the unions to accept his grievance, that they failed to process it in a timely manner, that they conducted no investigation and refused to discuss it with him, that they refused to take his statement or to contact the doctor or his nurse, that despite his almost

daily attempts to ascertain the status of his grievance he was kept completely uninformed, that the unions' dealings with the employer were *pro forma* and a sham, that the unions presented no evidence to the employer to support his grievance, and that the unions did not notify him when the grievance was dropped.

If fully credited, a jury could find from his testimony that the unions' alleged conduct supports an inference of bad faith and arbitrary and capricious conduct. *See Vaca v. Sipes,* 386 U.S. 171, 190–94, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Butler v. Local No. 823, supra,* 514 F.2d at 453.

mony and introduced evidence tending to show that the doctor had not authorized the alterations. The district judge resolved the conflicting evidence largely in favor of the unions. However, a case may be taken from the jury only when there is no genuine issue of material fact. In *Chenette v. Trustees of Iowa College,* 431 F.2d 49, 53 (8th Cir. 1970), we reversed summary judgment because

> the court's conclusion necessarily involved a choice or evaluation between two rational possibilities. Evaluative judgment between two rationally possible conclusions from facts cannot be engaged in on summary judgment.

*See Gabauer v. Woodcock,* 520 F.2d 1084, 1091 (8th Cir. 1975). Thus, if these issues are material, a jury must pass on these fact questions.

However, defendant unions assert that resolution of these issues is unnecessary to sustain the judgment in their favor since provisions of the collective bargaining agreement demonstrate the meritlessness of Minnis' grievance and entitle the unions to prevail as a matter of law. The collective bargaining agreement, among other things, provides:

> Employees shall be regarded as temporary employees until after their names have been placed on the seniority list. There shall be no responsibility for the reemployment of temporary employees if they are laid off or discharged during this period. However, any claim by a temporary employee made after 30 days of employment that his layoff or discharge is not for cause may be taken up as a grievance.

The district court found on the basis of this provision and the undisputed testimony of both union and employer representatives that the employer, General Motors, was entitled to discharge Minnis without any reason at all. The unions contend therefore that they had no duty to process Minnis' grievance since "there was no way that the UAW * * * could force General Motors [to rehire Minnis]."

The unions properly assert that they possess substantial discretion in deciding which grievances to pursue. *See Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1952). Even negligence or poor judgment in exercising this discretion will not expose a union to liability so long as it acts with "complete good faith and honesty of purpose," *id.,* and not in a "perfunctory manner." *Bazarte v. United Transportation Union,* 429 F.2d 868, 872 (3d Cir. 1970). It may be that in this case the unions could have declined to pursue Minnis' grievance from the beginning on the theory that the employer had an absolute contractual right of discharge. Certainly, after conducting even a limited investigation, the unions could have concluded that there was no reasonable chance of success and withdrawn the grievance without breaching their duty to Minnis. However, if we credit Minnis' testimony, as we must for purposes of this appeal, the unions did not do this. Instead, they agreed to represent Minnis and then failed to make any effort actually to do so and finally dropped the grievance without notifying Minnis for almost six months. *See* note 5 *supra.* Although the unions could not "force" General Motors to rehire Minnis, a company witness testified at trial that the company would have rehired Minnis had it been shown that Minnis did not falsify his form. Despite the contract, General Motors did not object to the consideration of Minnis' claim at grievance proceedings. Under this state of the record, the contract terms cited by the union do not necessarily serve to bar Minnis' claim.

We do not undertake any assessment of the actual merits of Minnis' claim other than to observe that the evidence presents an issue for resolution by a jury.

Accordingly, we reverse and remand for further proceedings consistent with this opinion.