Alice LEACH and Carmen Irons, Plaintiffs–Appellees,

v.

PAN AMERICAN WORLD AIRWAYS, et al., Defendants,

Teamsters Local Union No. 769, Defendant–Appellant.

No. 87-5323.

United States Court of Appeals, Eleventh Circuit.

April 12, 1988.

Robert A. Sugarman, Miami, Fla., for defendant-appellant.

Richard Schoolman, Pan Am Legal Dept., New York City, Joseph Z. Fleming, Fleming and Klink, Miami, Fla., for Pan American.

Alan E. Dubow, Dubow & Hoffman, J. Bruce Hoffman, Coral Gables, Fla., for Leach & Irons.

Gerry M. Miller, Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C., Milwaukee, Wis., for Georgia–Florida Conference.

Before HILL, Circuit Judge, HENDERSON*, Senior Circuit Judge, and MURPHY**, District Judge.

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Harold L. Murphy, U.S. District Judge for the Northern District of Georgia, sit-

HILL, Circuit Judge:

## FACTS

Plaintiffs Alice Leach and Carmen Irons are employees of Pan American World Airways, Inc.; defendant Teamsters Local 769 represents them before their employer. The two claim that the Department of Labor has declared them to be handicapped as a result of their extreme physical reactions to smoke in the workplace. Pursuant to the Railway Labor Act, Local 769 presented the employees' claims to the System Board of Adjustment: both plaintiffs insist this representation was flawed because the union did not present the grievances in the manner they requested of it, and because the union did not allow them to choose whether they would rather represent themselves.

After the System Board deadlocked over the claims of Leach and Irons, the union presented Irons' claim to a neutral arbitrator. Leach asserts that she signed an agreement with Pan American and Local 769 to allow her grievance to be presented at the same hearing; at the hearing, however, Local 769 withdrew Leach's claim when Pan American objected to its introduction. Leach contends she should have been notified before Local 769 breached the agreement.

Irons lost her claim at arbitration. Leach never received a definitive answer as to her grievance. Both women filed charges against Local 769 according to the Teamsters' internal procedures. An internal board exonerated Local 769, and the plaintiffs brought their claims to federal court, seeking to overturn the arbitration award and to recover damages for Local 769's breach of its duty of fair representation. The complaint named Pan American, Local 769, the International Brotherhood of Teamsters, and the Georgia–Florida Conference of Teamsters as defendants.

The present appeal poses the single and deceptively simple question of whether Leach and Irons are entitled to a jury trial of their claim that the union breached its duty to represent them fairly. The district court, 651 F.Supp. 713, found that a controlling precedent in the former Fifth Circuit bound it to conclude that plaintiffs were to receive a jury trial. *See Cox v. C.H. Masland & Sons, Inc.*, 607 F.2d 138 (5th Cir.1979). Suggesting that the *Cox* rationale had been undercut, if not destroyed, the district court certified the question for interlocutory appeal. We agree with the district court that recent Supreme Court cases have undermined *Cox*, and, accordingly, we reverse.

## THE DESTRUCTION OF *COX*

*Cox* expressly concluded that a discharged employee could obtain a jury trial for his claim that the union failed to represent him fairly. *Cox*, 607 F.2d at 143. Because the *Cox* decision was issued by the Fifth Circuit prior to September of 1981, normally we would accept its precedential value in this circuit, absent an Eleventh Circuit *en banc* decision to the contrary. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (5th Cir. Unit B Aug. 1981). At the same time, however, according to both Eleventh and Fifth Circuit precedent this panel may not overlook decisions by the Supreme Court which implicitly overrule a binding circuit decision, or undercut its rationale. *See Gresham Park Community Organization v. Howell*, 652 F.2d 1227, 1234–35 (5th Cir. Unit B Aug. 1981); *United States v. Kirk*, 528 F.2d 1057, 1063 (5th Cir.1976) (dictum). *See also LeVick v. Skaggs Companies, Inc.*, 701 F.2d 777, 778 (9th Cir.1983).

The panel in *Cox* analyzed the question of whether to grant a jury trial by applying the three-pronged test supplied by the Supreme Court in *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).[1]

---

1. Congress, should it so desire, could establish the right to a jury trial in post-merger cases based on congressional statutes. The appellees, however, do not contend that Congress has attempted statutorily to grant the right to a jury. Appellees concede that the action for breach of the duty of fair representation was judicially created, *see Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), and has never been addressed specifically by Congress.

In *Ross* the Supreme Court explained that a jury trial would be constitutionally mandatory under the Seventh Amendment when the particular case was "legal" in nature; the nature of the claim "is determined by considering, first, the pre-merger [of law and equity] custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries." *Ross*, 396 U.S. at 538 n. 10, 90 S.Ct. at 738 n. 10. The *Cox* panel explained that suits alleging a breach of the duty of fair representation resembled a common law tort, an action triable to a jury prior to the merger of law and equity. Furthermore, the panel determined that the action was one to enforce a "statutory liability involving legal rights and remedies." *Cox*, 607 F.2d at 143. Such actions have been accorded the right to a jury trial. *Curtis v. Loether*, 415 U.S. 189, 193–94, 94 S.Ct. 1005, 1007–08, 39 L.Ed.2d 260 (1974).

The *Cox* court summarily addressed the second two prongs of *Ross*, explaining that the plaintiffs sought the traditional legal remedy of compensatory and punitive damages, and that juries "could adequately" adjudge the merits of disputes over the duty of fair representation. *Cox*, 607 F.2d at 143.

Since the panel decided *Cox*, two Supreme Court cases have eroded the rationale on which the panel constructed its decision.[2] In *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the Supreme Court explained:

> Respondent suggests *Hines* actions might also be characterized as actions upon a statute, personal injury actions, or malpractice actions, all governed by a 3–year limitations period in New York.... All of these characterizations suffer from the same flaw as the effort to characterize the action as one for breach of contract: they overlook the fact that an arbitration award stands between the employee and any relief which may be awarded against the company.

*Mitchell*, 451 U.S. at 62 n. 4, 101 S.Ct. 1564 n. 4.[3]

A second Supreme Court decision toppled what remained of the *Cox* analysis. In *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Court explained that the hybrid action at issue here "has no close analogy in ordinary state law." *DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291.[4]

*Mitchell* and *DelCostello* also have undermined the reasoning the *Cox* panel used to assert that cases such as this one meet the second factor set forth in *Ross*. *Cox* stated that in cases such as the one at issue here plaintiffs seek only the traditional legal remedy of compensatory and punitive damages from the defendant union. *DelCostello* explained, however, that the claim against the union is "inextricably interdependent," *DelCostello*, 462 U.S. at

---

**2.** While both cases were decided under the Labor Management Relations Act, 29 U.S.C. §§ 141–187, and Leach and Irons are suing under the Railway Labor Act, 45 U.S.C. §§ 151–188, for purposes of fair representation suits courts have refused to distinguish the two acts. *See, e.g., Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 221 (5th Cir.1984).

**3.** As the Sixth Circuit has explained: "[p]erhaps the most vital part of the analysis in *Mitchell* was the Court's recognition that Section 301 [29 U.S.C. § 185] claims are neither standard contract nor standard tort actions." *Badon v. General Motors Corp.*, 679 F.2d 93, 97 (6th Cir.1982).

**4.** In both *DelCostello* and *Mitchell* an employee sued his former employer for wrongful termination and his union for breach of its duty to fairly represent him. In *Mitchell* the Court analogized the action to one to vacate an arbitration award, and applied New York's 90–day statute of limitations for such actions. In *DelCostello* the Court considered two additional questions: what state statute of limitations should govern the claim against the union (as opposed to the employer), and whether or not to borrow a federal rather than a state statute of limitations. The Court again refused to draw an analogy to an action for a breach of contract, and additionally declined to analogize to either an action to vacate an arbitration award or to an action for legal malpractice. The Court concluded that in this situation no state law analogy adequately addressed the unique concerns of federal labor law, and borrowed the statute found in the National Labor Relations Act at 29 U.S.C. § 160(b).

164–65, 103 S.Ct. at 2290–91 (quoting *Mitchell,* 451 U.S. at 66–67, 101 S.Ct. at 1565–1566 (Stewart, J., concurring in the judgment)), with the claim against the employer: " '[t]o prevail against either the company or the Union, ... [employees-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.' " *Mitchell,* 451 U.S. at 66–67, 101 S.Ct. 1565–1566 (Stewart, J., concurring in the judgment) (quoting *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976)). The *Hines* language is also quoted in *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291.

Leach's and Irons' claim against the employer seeks vacation of the arbitration award,[5] a *de novo* hearing of the merits of plaintiffs' claims, and "fair and adequate" equitable relief for the plaintiffs.[6] None of the remedies sought by plaintiffs constitutionally merits a jury trial. Now that the Supreme Court has established that the remedies for that portion of plaintiffs' suit directed at the employer are clearly equitable, and that the two parts of the claim are "inextricably intertwined," we can no longer rely on *Cox's* conclusion that the remedies sought by the plaintiffs against the union are legal ones.

Furthermore, the Supreme Court has limited the scope of damages awarded to employees victorious in fair representation cases. Stressing that the purpose of relief in these cases is "to make the injured employee whole," *International Bro. of Electrical Wkrs. v. Foust,* 442 U.S. 42, 49, 99 S.Ct. 2121, 2126, 60 L.Ed.2d 698 (1979), is "essentially remedial," *id.* at 52, 99 S.Ct. at 2127, and is governed by the "compensation principle," *id.* at 49, 99 S.Ct. at 2126, the Court has refused to allow punitive damages against a union. *Id.* at 50–52, 99 S.Ct. at 2126–2128. While Leach and Irons

sought punitive damages in their original complaint, the district court correctly struck the request; the remedies remaining to plaintiffs, then, are equitable, "make whole" ones.

As to *Cox's* determination that juries would be able to adequately deal with the issues at stake in breach of duty of fair representation cases, we note that at least two courts, including this one, have questioned whether the third tenet of *Ross* retains any vitality in light of the fact that the Supreme Court has several times considered the right to a jury trial without analyzing or even mentioning the third factor. *Phillips v. Kaplus,* 764 F.2d 807, 814 n. 6 (11th Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986), *In re U.S. Financial Securities Litigation,* 609 F.2d 411, 425–26 (9th Cir. 1979), *cert. denied sub nom. Gant v. Union Bank,* 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980). In fact, the Supreme Court has recently explained that it "has not used [the third factor] as an independent basis for extending the right to a jury trial under the Seventh Amendment." *Tull v. United States,* —— U.S. ——, —— n. 4, 107 S.Ct. 1831, 1835 n. 4, 95 L.Ed.2d 365 (1987).

*Cox* having been implicitly destroyed by recent Supreme Court cases, this panel has no choice but to reconsider the question of whether plaintiffs have a right to a jury trial when they sue a union for the breach of the duty of fair representation.

## PLAINTIFFS HAVE NO RIGHT TO A JURY TRIAL

*DelCostello* and *Mitchell* have not only undermined *Cox;* they have also dictated the answer we must give to the question of whether plaintiffs constitutionally deserve a jury trial in their suit against their union

---

5. *See Skidmore v. Consolidated Rail Corp.,* 619 F.2d 157 (2d Cir.1979), *cert. denied,* 449 U.S. 854, 101 S.Ct. 148, 66 L.Ed.2d 488 (1980) (no right to a jury trial in an action to vacate an arbitration award under the Railway Labor Act); *Northwest Airlines, Inc. v. Air Line Pilots Ass'n,* 373 F.2d 136 (8th Cir.), *cert. denied,* 389

U.S. 827, 88 S.Ct. 77, 19 L.Ed.2d 83 (1967) (same).

6. Specifically, plaintiffs claim: "the loss of employment benefits, protection under the collective bargaining agreement, and their expenses...." R1–21–9, 10, 12.

for the alleged breach of its duty to represent them fairly.[7]

In *DelCostello* the Court determined that the inadequacy of state law analogies, coupled with the overriding importance of national interests in federal labor policy, permitted it to ignore state law and choose the federal law it believed most appropriate.

We reach a similar conclusion here. The need for uniformity and predictability in federal labor policy, when combined with the ill fit of any state law analogy for an action for breach of the duty of fair representation, leads us to eschew any analogy other than one to an unfair labor practice charge.[8] While the Supreme Court has

7. We realize that the Fifth Circuit has applied *Cox* since *DelCostello* and *Mitchell* were decided. *See Roscello v. Southwest Airlines Co.*, 726 F.2d 217 (5th Cir.1984). To the extent that that court found that *Cox* could not be distinguished merely because it dealt with the National Labor Relations Act as opposed to the Railway Labor Act, we agree with that decision. *Roscello*, 726 F.2d at 221. To whatever extent the Fifth Circuit upheld the remainder of *Cox*, however, we disagree. The Fifth Circuit cited neither *DelCostello* nor *Mitchell*, and did not reconsider the validity of *Cox* in light of those two cases. Given that fact, we surmise that the decision did not address the issues raised by the parties before this court.

We also recognize that our conclusion differs from that reached by the D.C. Circuit. *See Quinn v. DiGiulian*, 739 F.2d 637 (D.C.Cir.1984). The D.C. Circuit insisted that *DelCostello* did not imply that duty of fair representation cases were equitable ones. Noting that in recent analysis the Supreme Court has emphasized prong two, the remedy sought, the court concluded *DelCostello*'s discrediting of all common law analogies could not alter the more significant fact that "an action for damages for breach of the duty of fair representation, like a damages action for housing discrimination, is an action to enforce a legal right." *Quinn*, 739 F.2d at 646. As we explained above, we conclude that the combination of the *Mitchell* and *DelCostello* cases invalidated previous holdings that the remedy sought by these plaintiffs is legal rather than equitable.

The D.C. Circuit correctly noted that Cox sought only damages from his former employer and union. It concluded that it could not depart from the *Cox* rule merely because a plaintiff sought equitable remedies as well as legal ones. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 956–57, 3 L.Ed.2d 988 (1959) (where both legal and equitable issues are present in a single case, "only under the most imperative circumstances, ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims.").

We disagree with the *Quinn* conclusion for two reasons. First, we believe the federal policies at stake in labor law constitute the "imperative circumstances" to which *Beacon Theatres* referred. Secondly and independently, the Supreme Court has explained that monetary damages do not necessarily constitute a legal remedy, *Hartford Accident & Indemnity Co. v. South-*

*ern Pac. Co.*, 273 U.S. 207, 217–18, 47 S.Ct. 357, 359–60, 71 L.Ed. 612 (1927); we conclude that here, where the damages are so intertwined with the accuracy of the arbitration award, the plaintiffs seek an equitable remedy even where they do not additionally demand vacation of the arbitration award. We note that punitive damages, the legal remedy sought in *Tull*, may not be collected against a union for a breach of the duty of fair representation. *Foust*, 442 U.S. at 49, 99 S.Ct. at 2126.

Finally, although as we have explained we do not find the distinction relevant, we observe that this case differs from both *Quinn* and *Cox* because these plaintiffs seek to vacate an arbitration award in the same action in which they present their suit for breach of the duty of fair representation.

8. We recognize that, in refusing to hold that NLRB jurisdiction pre-empted judicial cognizance of fair representation claims, the Supreme Court had concluded that it need not apply concerns as to uniformity of labor law or as to safeguarding administrative jurisdiction. *Vaca v. Sipes*, 386 U.S. 171, 180–81, 87 S.Ct. 903, 911–12, 17 L.Ed.2d 842 (1967). While both *Mitchell* and *DelCostello* were decided after *Vaca*, we need not rely on the timing of the cases as *Vaca* may be harmonized with our conclusion here.

First, we note that our concern was to obtain a common law analogy: despite the obvious problems with the analogies, we, like the Supreme Court, would have had to tolerate the ill fit had we no better choice. *DelCostello*, 462 U.S. at 169, 103 S.Ct. at 2293. Fortunately, we may rely on the same analogy drawn by the Supreme Court in *DelCostello*, namely one to unfair labor practices. *Id.* Secondly, while we concede that labor policy concerns may have little validity in the context of assessing the jurisdiction over fair representation cases, labor policy does assume some force when courts are determining how they should handle cases arguably within their jurisdiction. *See DelCostello*, 462 U.S. at 168, 103 S.Ct. at 2293. *See also Hines*, 424 U.S. at 562, 96 S.Ct. at 1055 ("[t]he strong policy favoring judicial enforcement of collective-bargaining contracts was sufficiently powerful to sustain the jurisdiction of the district courts over enforcement suits even though the conduct involved was arguably or would amount to an unfair labor practice within the jurisdiction of the National Labor Relations Board."). *See also Foust*, 442 U.S. at 50, 99 S.Ct.

never held that an action against a union for the breach of the duty of fair representation is an unfair labor practice, it has observed that: "the family resemblance is undeniable." *DelCostello,* 462 U.S. at 170, 103 S.Ct. at 2293. This court has held specifically that a breach of the duty of fair representation is an unfair labor practice. *Local Union No. 12, United Rubber, C., L., & P. Wkrs. v. N.L.R.B.,* 368 F.2d 12 (5th Cir.1966), *cert. denied,* 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967). *See also Erkins v. United Steelworkers of America,* 723 F.2d 837, 839 (11th Cir.), *cert. denied,* 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984). Statutorily, suits to prevent unfair labor practices are not accorded a jury trial.[9]

While fair representation actions do not resemble any particular actions at either law or equity, we note that from their inception they have embodied certain traditional notions associated with equity jurisdiction. Equity has been defined as "justice, that is, as ascertained by natural reason or ethical insight, but independent of the formulated body of law." *Black's Law Dictionary* 634 (4th Ed.1951). The action for the breach of the duty of fair representation actually was implied by the Supreme Court from the statutory exclusivity of the bargaining agent. The Court reasoned

that the duty arose from a "fair interpretation of the statutory language" and the "principle of general application that the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf." *Steele,* 323 U.S. at 202, 65 S.Ct. at 232. We conclude that "the action involves rights and remedies of the sort traditionally enforced" in equity. *Pernell v. Southall Realty,* 416 U.S. 363, 375, 94 S.Ct. 1723, 1729, 40 L.Ed.2d 198 (1974).

*Mitchell* and *DelCostello* likewise control our decision as to whether plaintiffs' request for a jury trial meets *Ross* factor number two. If the suit against the employer is "inextricably intertwined" with that against the union, then we cannot separate the remedies and the trial procedures in the two claims, declaring one set equitable and the other legal. *Cf. Phillips,* 764 F.2d at 814 (party may not transform equitable action into legal one merely because disposition will involve the distribution of assets). "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291. Plaintiffs are attempting to

---

at 2126 (allowing punitive damages against unions in fair representation suits would deplete union treasuries, curtail union discretion, and make results "unpredictable").

Finally, the rationale that the Supreme Court has suggested precludes labor policy considerations in some areas does not apply in the fair representation context:

The need for uniformity ... is greatest where its absence would threaten the smooth functioning of those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it. For the most part, statutes of limitations come into play only when these processes have already broken down. Lack of uniformity in this area is therefore unlikely to frustrate in any important way the achievement of any significant goal of labor policy.

*International U., U.A., A. & A.I.W. v. Hoosier C. Corp.,* 383 U.S. 696, 702, 86 S.Ct. 1107, 1111, 16 L.Ed.2d 192 (1966). Unlike the statute of limitations issue, the question of whether to accord a jury trial directly affects the "private settlement of disputes under [the collective bargaining

agreement]." *Id. See also Foust,* 442 U.S. at 51–52, 99 S.Ct. at 2127–28.

9. Such suits are tried first to the National Railroad Adjustment Board or a similar body. Appeals may be had to a federal district court. 45 U.S.C. § 153. *See also Skidmore,* 619 F.2d 157 (no right to jury trial in an action attempting to overturn arbitration awards made under the Railway Labor Act); *Northwest Airlines,* 373 F.2d 136 (same). In another context the Supreme Court has refused to provide two different rules, one for the suit against the employer and one for the suit against the union. *DelCostello,* 462 U.S. at 169 n. 19, 103 S.Ct. at 2293 n. 19.

Our decision comports with *West v. Conrail,* —— U.S. ——, ——, 107 S.Ct. 1538, 1541, 95 L.Ed.2d 32 (1987), in which the Court explained that *DelCostello* had merely supplied a rule where a gap in the statutory scheme existed; no amendment of the Federal Rules of Civil Procedure was intended or resultant. Our decision, likewise, extends only so far as to fill the interstices in the law.

use the fair representation claim to vacate the arbitration decision,[10] and simultaneously to distance the claim from the request to nullify the arbitration. We cannot condone the inconsistency they request.

As to the third prong of *Ross*, without commenting on its current importance within the *Ross* structure we note that if juries can decide these claims "adequately," *Cox*, 607 F.2d at 143, so can judges.

*Cox* having been invalidated, the district court opinion based on *Cox* is

REVERSED.

---

10. *See Mitchell,* 451 U.S. at 67, 101 S.Ct. at 1566 ("a plaintiff must prevail upon his unfair representation claim before he may even litigate the merits of his Section 301 claim against the employer").