Brian L. NICELY, individually and as a representative of a Class of Plaintiffs, comprised of Employees of USX and Members of USWA, Plaintiffs,

v.

USX (formerly United States Steel), a corporation, and United Steelworkers of America, AFL–CIO, a labor organization, Defendants.

Civ. A. No. 87–2429.

United States District Court, W.D. Pennsylvania.

July 7, 1989.

James Perich, Mohan & Perich, Pittsburgh, Pa., for plaintiffs.

Richard J. Brean, Asst. Gen. Counsel, United Steelworkers of America, Legal Dept., Dawne S. Hickton, Billy M. Tennant, USX Corp., Law Dept., Pittsburgh, Pa., for defendants.

## OPINION AND ORDER

SIMMONS, District Judge.

Four years ago, Judge Mencer made clear to Plaintiff that fair representation claims are not triable to a jury when he struck Plaintiff's jury demand in *Nicely v. U.S. Steel Corporation, et al.* (C.A. No. 83–2750). Undeterred, Plaintiff has again pleaded in the instant action that he is entitled to a jury trial of his fair representation claims. He was wrong four years ago; he is wrong today.

In his Complaint, Plaintiff alleges that USX Corporation breached the collective bargaining agreement between itself and the United Steelworkers of America when it arbitrarily reclassified job titles at its Edgar Thomson Plant in Braddock and that the Union breached its duty of fair representation by both failing to oppose the job reclassification and by neglecting or refusing to process a grievance filed by Plaintiff contesting the reclassification plan. (See: Complaint, ¶¶ 15–17, 23). As relief, Plaintiff prays that this Court restore his proper job classification and wage scale and award lost wages and benefits, unspecified monetary damages and attorneys' fees. (*Supra,* Prayer for Relief).[1]

Neither the Supreme Court nor the Third Circuit has squarely determined whether there is a right to a jury trial as to a claim that a union has breached its duty of fair representation. The lower Federal Courts are divided on the question. A substantial body of precedent, including an opinion by Judge Weber of this District Court, has found no such right. *See e.g., King v. Fox Grocery Company,* 678 F.Supp. 1174 (W.D.Pa.1988); *Leach v. Pan American World Airways,* 842 F.2d 285 (11th Cir.1988); *Spicher v. Wilson Foods Corporation,* 122 LRRM 3168, 1985 WL 6291 (C.D.Ill.1985); *McIntyre v. United Steelworkers of America,* 120 LRRM 2911 (M.D.Fla.1985); *James v. Universal Manufacturing Co.,* 109 LRRM 2858 (N.D.Miss. 1981); *Atwood v. Pacific Maritime Ass'n,* 432 F.Supp. 491 (D.Oregon 1977); *aff'd,* 657 F.2d 1055 (9th Cir.1981);[2] *Coleman v. Kroger Co.,* 399 F.Supp. 724 (W.D.Va. 1975); *Acheson v. Bottlers Local Union*

---

1. The Complaint has been pleaded as a putative class action. At the recent status conference, Plaintiff's counsel indicated that Plaintiff was contemplating dismissal of the class allegations.

2. On appeal, the Ninth Circuit did not decide the propriety of the District Court's denial of a jury trial.

*No. 896,* 83 LRRM 2845 (N.D.Cal.1973); *Brady v. Trans World Airlines,* 196 F.Supp. 504, *aff'd,* 401 F.2d 87 (3d Cir. 1968), *cert. den.,* 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969).[3] Other opinions reach an opposite conclusion.[4] As we explain below, the first line of cases adopts the sounder rule since there is neither a statutory nor constitutional right to a jury trial as to the issue of whether a union has breached its duty of fair representation.

 The duty of fair representation is a "statutory duty," *Vaca v. Sipes,* 386 U.S. 171 at 177, 87 S.Ct. 903 at 910, 17 L.Ed.2d 842 (1967), one which the Supreme Court has found to be "implicit in the National Labor Relations Act," *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42 at 46–47 n. 8, 99 S.Ct. 2121 at 2125 n. 8, 60 L.Ed.2d 698 (1979). The cause of action for breach of the duty likewise has been "judicially 'implied from the statute.'" *Id.* at 47, 99 S.Ct. at 2125, quoting *Steele v. Louisville & Nashville Railroad,* 323 U.S. 192 at 204, 65 S.Ct. 226 at 233, 89 L.Ed. 173 (1944). *See also Del-Costello v. International Brotherhood of Teamsters,* 462 U.S. 151 at 164, 103 S.Ct. 2281 at 2290, 76 L.Ed.2d 476 (1983) ("The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act.").[5] The threshold question whenever a jury trial is sought with respect to a statutory cause of action is whether Congress created a statutory right to trial by jury for that cause of action. *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). With re-

spect to the fair representation cause of action, that question must be answered in the negative.

There is nothing in the NLRA which, in terms, provides for a jury trial for fair representation claims. Nor is there anything in the Act or its history to suggest that Congress intended such claims to be tried to a jury. *Cf., Lorillard v. Pons, supra.* The fact of the matter is that the fair representation cause of action "had not yet [been] divined," *United Parcel Service v. Mitchell,* 451 U.S. 56 at 76, 101 S.Ct. 1559 at 1570, 67 L.Ed.2d 732 (1981) (Stevens, J., dissenting in part), when Congress enacted the NLRA in 1935. Consequently, both the statute itself and its legislative history are barren of any reference to the fair representation duty or to the cause of action for breach of that duty.

In enacting the NLRA, Congress did consider whether to authorize jury trials for other types of actions expressly created by the Act—unfair labor practice actions. Congress decided not to do so. See: *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1 at 48, 57 S.Ct. 615 at 629, 81 L.Ed. 893 (1937). As the Supreme Court recognized in *DelCostello,* there is, at the very least, "substantial overlap" and a "family resemblance [which] is undeniable" between the fair representation cause of action and the unfair labor practice cause of action. *Supra,* 462 U.S. at 171, 103 S.Ct. at 2294. Indeed the NLRB and virtually every court of appeals has held that a breach of the duty of fair representation is *ipso facto* an unfair labor practice. See:

**3.** In *Brady,* the Circuit noted that the District Court had struck the jury demand but did not take up the issue in its opinion. See: 401 F.2d 87 at 96, n. 32. Subsequently, in *Nedd v. Thomas,* 556 F.2d 190 (3d Cir.1977), the Circuit, while affirming the striking of a jury demand in circumstances where a fair representation claim was entwined with trust questions, criticized a portion of the *Brady* reasoning in light of the Supreme Court's subsequent decision in *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974).

**4.** *See e.g.: Quinn v. DiGiulian,* 739 F.2d 637 (D.C.Cir.1984); *Smith v. Hussmann Refrigator Company,* 619 F.2d 1229 (8th Cir.1980, *en banc ), cert. den.,* 449 U.S. 839, 101 S.Ct. 116, 66

L.Ed.2d 46 (1980); *Minnis v. United Auto Workers,* 531 F.2d 850 (8th Cir.1975); *Lucas v. Philco—Ford Corporation,* 380 F.Supp. 139 at 145–146 (E.D.Pa.1974).

**5.** As *DelCostello* makes clear, a fair representation claim does not arise under § 301 of the Labor–Management Relations Act, 29 U.S.C. § 185, the statute which provides the jurisdictional base for the breach of contract claim against the employer. *Supra* at 164, 103 S.Ct. at 2290. Rather, the fair representation claim is implied from § 9(a) of the NLRA, 29 U.S.C. § 159(a), which confers exclusive representation rights on unions. *See: Mumford v. Glover,* 503 F.2d 878 at 883 (5th Cir.1974).

*Miranda Fuel Co.,* 140 N.L.R.B. 181 (1962); *NLRB v. Local 282, International Brotherhood of Teamsters,* 740 F.2d 141 (2nd Cir.1984); *Newport News Shipbuilding Co. v. NLRB,* 631 F.2d 263 (4th Cir. 1980); *Abilene Sheet Metal, Inc. v. NLRB,* 619 F.2d 332 (5th Cir.1980); *NLRB v. American Postal Workers Union,* 618 F.2d 1249 (8th Cir.1980); *Kesner v. NLRB,* 532 F.2d 1169 (7th Cir.1976); *Kling v. NLRB,* 503 F.2d 1044 (9th Cir.1975); *Truck Drivers v. NLRB,* 379 F.2d 137 (D.C.Cir. 1967). Given the close relationship between the two causes of action, the fact that Congress did not provide for jury trials for unfair labor practice actions suggests that, had Congress considered the issue, it would not have authorized jury trials for breach of the duty of fair representation claims either.

The remaining issue is whether the Seventh Amendment requires a jury trial for fair representation cases. That Amendment preserves "the right which existed under the English common law when the Amendment was adopted." *Baltimore & Carolina Line Inc. v. Redman,* 295 U.S. 654 at 657, 55 S.Ct. 890 at 891, 79 L.Ed. 1636 (1935).

The fair representation cause of action was not known to the common law; it is a "creature of labor law," *United Parcel Service v. Mitchell, supra* at 63, 101 S.Ct. at 1564, and it has "no close analogy in ordinary state law," *DelCostello v. International Brotherhood of Teamsters, supra* at 165, 103 S.Ct. at 2291. But the fair representation duty is rooted in long-settled principles of equity—specifically, those related to fiduciary responsibility. Indeed, in *Steele v. Louisville & Nashville Railroad, supra,* the case which first recognized the fair representation duty,[6] the Supreme Court viewed the duty as simply an instance of the fiduciary "principle of general application that the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf ..." 323 U.S. at 202, 65 S.Ct. at 232.[7]

When the Seventh Amendment was framed, as today, claims that a fiduciary has breached a fiduciary duty were equitable claims, which were tried without a jury. *See:* 4 *Scott on Trusts* § 281 at 2332 (3d ed. 1967); *accord: Nedd v. Thomas, supra.* And because fair representation suits are fairly analogized to fiduciary actions, the Seventh Amendment does not require a jury trial for fair representation claims either. It is precisely this recognition which prompted the denial of a jury trial by Judge Mencer in Plaintiff's prior action.

We know of no court which considered this fiduciary analogy before granting a trial by jury for a fair representation claim. Rather, as exemplified by the Eighth Circuit's decision in *Minnis v. United Auto Workers, supra,* most simply analogize a fair representation action to a tort suit at common law on the supposition that an action seeking to remedy a breach of a duty imposed by law necessarily sounds in tort.

But as the fiduciary analogy demonstrates, a suit to remedy a breach of a duty imposed by law may be an equitable suit. The relevant inquiry is whether the tort/legal or the fiduciary/equitable analogy provides the closer parallel to the particular cause of action at issue—here, the breach of the duty of fair representation cause of action. Labeling as tort suits all actions to enforce duties imposed by law is simply a way of avoiding, rather than a way of answering, that critical inquiry.

---

6. *Steele* arose under the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.* The duty of fair representation was later extended by the Supreme Court to unions certified under the NLRA in *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

7. The continuing vitality of the trust analogy in the fair representation context is indicated by the Supreme Court's decision in *Bowen v. United States Postal Service,* 459 U.S. 212 at 243, 103 S.Ct. 588 at 606, 74 L.Ed.2d 402 (1983), wherein the dissent criticized the majority's damage allocation formula in a hybrid § 301/fair representation action precisely because it failed to comport with established trust doctrines of primary and secondary liability in instances of fiduciary breach.

■ *Minnis*, as does Plaintiff, also wrongly assumed that *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), established a *per se* rule that breaches of statutory duties, such as the duty of fair representation, are triable to a jury. In point of fact, *Curtis* held nothing of the sort. Rather, the case explicitly states, *supra* at 195, 94 S.Ct. at 1009 (emphasis added):

"[W]hen Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts ... a jury trial must be available *if the action involved rights and remedies of the sort typically enforced in an action at law.*"

Thus, *Curtis* merely poses, rather than answers, the Seventh Amendment issue. And the argument against recognizing a jury trial right in fair representation cases rests on the proposition that such actions do not involve "legal" rights as required by *Curtis* but rather involve rights of the sort typically enforced in an action in equity. Thus, if the fiduciary analogy holds, under *Curtis* there is no right to a jury trial in a duty of fair representation case.

Crucially, *Vaca* itself makes clear that the remedial scheme in a fair representation action is equitable in nature since it is characterized by broad discretion on the part of the trial court. *See also: Hecht Company v. Bowles*, 321 U.S. 321 at 329, 64 S.Ct. 587 at 591–592, 88 L.Ed. 754 (1944). Thus, the Supreme Court insisted, "[t]he appropriate remedy for a breach of a union's duty of fair representation must vary with the circumstances of the particular breach," *supra* at 195, 87 S.Ct. at 919, and that "an order compelling arbitration should be viewed as one of the available remedies when a breach of the union's duty is proved," *supra*, 386 U.S. at 196, 87 S.Ct. at 920. In short, "the court should be free ... to award the employee appropriate damages or equitable relief." *Id.* A duty of fair representation suit is thus far from

the traditional legal action where damages are awarded as of right. *Cf., Curtis v. Loether, supra* at 196–197, 94 S.Ct. at 1009–1010, 39 L.Ed.2d 260 (1974). Instead, it is characterizable as "equitable," since the Court retains the authority to award equitable relief (such as an order of arbitration or reinstatement) if it deems such relief more appropriate than damages. Such injunctive relief was, of course, not an available option in a pre-merger common law court.

While injunctive relief was not available in a pre-merger legal action, damages were available in equity. Thus, the fact that damages are an available remedial option in a fair representation suit does not make the action a "legal" one, for "an equity court possesses some discretionary power to award damages in order to do complete justice." *Minnis v. United Auto Workers, supra* at 852.[8] Indeed, a suit for breach of fiduciary duty is a classic example of an equitable action where damages are among the available remedies. And Justice Brennan in his concurring opinion in *Massachusetts Mutual v. Russell*, 473 U.S. 134, 154 n. 10, 105 S.Ct. 3085, 3096 n. 10, 87 L.Ed.2d 96 (1985), emphasized: "trust-law remedies are equitable in nature, and include provision of monetary damages." An action for breach of the duty of fair representation thus involves the same remedial options as have traditionally been available in equity, and these options specifically correspond to those in an action for breach of fiduciary duty. Indeed, the remedial options available in a duty of fair representation case *are only* consistent with the remedial power of an equity court. And this conclusion finds strong support in the companion case to *Steele, Tunstall v. Brotherhood of Locomotive Firemen*, 323 U.S. 210 at 211, 214, 65 S.Ct. 235 at 236, 237, 89 L.Ed. 187 (1944), wherein the Supreme Court clearly regarded a fair representation suit praying for an injunction and award of damages as seeking equitable relief. This being so, the

8. The *Minnis* Court erroneously believed, however, that "damages resulting from a breach of the duty of fair representation do not fall into a discretionary category but may be recovered as of right." *Id.* The only authority cited by *Min-*

*nis* to support this statement does not provide such support. *See: Richardson v. Communications Workers*, 443 F.2d 974 (8th Cir.1971). And the statement is directly in conflict with the language from *Vaca v. Sipes* quoted above.

Seventh Amendment does not compel a jury trial as to fair representation claims.

The soundness of the conclusion that jury trials are unavailable as to fair representation claims is confirmed by two recent closely reasoned decisions, one from this District, *King v. Fox Grocery Company, supra,* the other from the Eleventh Circuit, *Leach v. Pan American World Airways, supra.*

In *King,* the plaintiff alleged that he was discharged by the employer in violation of the collective bargaining agreement and that his union breached its duty of fair representation by failing to pursue his grievance contesting his discharge to arbitration and by otherwise failing to fairly represent him. Both defendants moved to strike the jury trial demand on the ground that no such right existed in hybrid breach of duty/breach of contract actions. Judge Weber, applying the tripartite test of *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), agreed and struck the jury demand.

In applying the *Ross* test, Judge Weber, gave preeminent weight to the first of the three factors: whether hybrid claims are equitable or legal in nature. And the answer to this question, he recognized, turned on the Supreme Court's analysis in *United Parcel Service v. Mitchell, supra,* and *DelCostello v. International Brotherhood of Teamsters, supra:*

> "... Hybrid § 301/fair representation claims did not exist at common law, so we look to analogous premerger causes of action. Many of the earlier decisions on this topic were grounded in the analogy between the plaintiff's claims against union and employer with common law tort and contract actions. These analogies were rejected by the Supreme Court in *United Parcel Service v. Mitchell,* 451 U.S. 56 [101 S.Ct. 1559, 67 L.Ed.2d 732] (1981) and *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151 [103 S.Ct. 2281, 76 L.Ed.2d 476] ... (1983). Instead, the Court stated that such claims are more properly likened to actions for *breach of fiduciary duties,* or to vacate arbitration awards, *both of which are traditionally suits in equity. Plaintiff's claim may also be likened to an unfair labor practice charge which carries with it no right to jury trial.*" *See DelCostello,* 462 U.S. at 170 [103 S.Ct. at 2293–2294] (*supra* at 1176, unofficial citations omitted, emphasis added).

The Court then emphasized that other courts had failed to heed this core teaching of *Mitchell* and *DelCostello:*

> "Recent decisions upholding a right to jury trial in these cases have distinguished the analogy to equity claims in *Mitchell* and *DelCostello* as occurring in a statute of limitations context. *E.g., Quinn v. DiGiulian,* 739 F.2d 637 (D.C. Cir.1984); *Massey v. Whittaker Corp.,* 661 F.Supp. 1151 (N.D.Ohio 1987); *Emerick v. McConway & Torley Corp.,* 650 F.Supp. 545 (E.D.Pa.1986). While *Mitchell* and *DelCostello* may not be strictly controlling here since they did not of course employ the *Ross* criteria, we believe they do carry considerable weight when trying to characterize the present action. To reject the characterizations of *Mitchell* and *DelCostello* entirely when considering jury trial rights makes for a chameleon of an action—legal for some purposes, equitable for others, with only a change of background needed." (*Supra* at 1176).

Next, the Court analyzed the remaining two *Ross* factors. It concluded that the second test, whether the relief sought is equitable or legal, cut in favor of denial of a jury trial since the plaintiff sought reinstatement and the abrogation of a grievance settlement, both classic equitable remedies.[9] The third factor, whether a jury

---

9. The plaintiff also sought backpay, a remedy which the Court characterized as legal rather than equitable. We believe that *King* is wrong on this point, and our sense is rooted in the insistence of the Supreme Court that backpay is an equitable remedy, which understanding it

drew directly from the National Labor Relations Act, the statute from which the duty of fair representation is judicially implied. *See: Albemarle Paper Company v. Moody,* 422 U.S. 405 at 421, 95 S.Ct. 2362 at 2373, 45 L.Ed.2d 280 (1975); *accord: Lorillard v. Pons,* 434 U.S. 575

possessed the practical ability to decide the case, it found to be equivocal.

The Court then returned to the first *Ross* factor, which it found determinative:

"Finally, we also note that the hybrid § 301/fair representation claim has its origins in the interstices of the complex federal statutory labor scheme. *Congress chose not to provide a jury trial right for actions explicitly created by the [NLRA] and we are reluctant to imply one for an action which is itself implied from the Act.*

Therefore, we conclude that there is no statutory or constitutional right to a jury trial in a hybrid § 301/fair representation claim against an employer and a union. Defendants' motion to strike the jury trial demand will be granted." (*Supra* at 1177, emphasis added).

*King* effectively ends the matter, but we note that its reasoning is consistent with a later-decided and persuasive Eleventh Circuit decision, *Leach v. Pan American World Airways, supra,* wherein that Court explicitly overruled the much-cited decision of *Cox v. C.H. Masland & Sons, Inc.,*[10] 607 F.2d 138 (5th Cir.1979).[11]

*Leach,* as did *King,* bottomed its analysis on the change of the understanding of the nature of the hybrid action announced by the Supreme Court in *Mitchell* and *DelCostello:*[12]

"*DelCostello* and *Mitchell* have not only undermined *Cox,* they have also dictated the answer we must give to the question of whether plaintiffs constitutionally deserve a jury trial in their suit against their union for the alleged breach of its duty to represent them fairly.

at 584, 98 S.Ct. 866 at 872, 55 L.Ed.2d 40 (1978). In any event, as *King* makes clear, the mere fact that a plaintiff seeks backpay does not create a right to jury trial.

**10.** *Cox,* like *Minnis,* is frequently relied upon by courts as the precedential basis for granting the right to a jury trial in hybrid actions. *See, e.g., Terry v. Chauffeurs, Teamsters & Helpers, Local 391,* 676 F.Supp. 659 (M.D.N.C.1987).

**11.** Because it was decided prior to the division of the old Fifth Circuit into the new Fifth Circuit and the Eleventh Circuit, *Cox* was binding

In *DelCostello* the Court determined that the inadequacy of state law analogies, coupled with the overriding importance of national interests in federal labor policy, permitted it to ignore state law and choose the federal law it believed most appropriate. We reach a similar conclusion here. *The need for uniformity and predictability in federal labor policy, when combined with the ill fit of any state law analogy for an action for breach of the duty of fair representation, leads us to eschew any analogy other than one to an unfair labor practice charge.* While the Supreme Court has never held that an action against a union for the breach of the duty of fair representation is an unfair labor practice, it has observed that: 'the family resemblance is undeniable.' *DelCostello,* 462 U.S. at 170, 103 S.Ct. at 2293. This court has held specifically that a breach of the duty of fair representation is an unfair labor practice ... *Statutorily, suits to prevent unfair labor practices are not accorded a jury trial.*

While fair representation actions do not resemble any particular actions at either law or equity, we note that from their inception they have embodied certain traditional notions associated with equity jurisdiction. Equity has been defined as 'justice, that is, as ascertained by natural reason or ethical insight, but independent of the formulated body of law.' *Black's Law Dictionary* 634 (4th Ed.1951). The action for the breach of the duty of fair representation actually was implied by the Supreme Court from the statutory exclusivity of the bargaining agent. The Court reasoned that the duty arose from a 'fair interpretation of the statutory lan-

precedent in the Eleventh Circuit at the time of the deciding of *Leach. See: Bonner v. City of Prichard,* 661 F.2d 1206 (5th Cir.1981).

**12.** Although the duty of fair representation in *Leach* arose from the Railway Labor Act, 45 U.S.C. §§ 151, *et seq.,* rather than from the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.,* as in *Mitchell* and *DelCostello,* the Eleventh Circuit noted that the two statutes are interpreted in tandem and that *Cox* itself arose under the NLRA.

guage' and the 'principle of general application that the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf.' *Steele* 323 U.S. at 202, 65 S.Ct. at 232. *We conclude that 'the action involves rights and remedies of the sort traditionally enforced' in equity. Pernell v. Southall Realty,* 416 U.S. 363 [94 S.Ct. 1723, 40 L.Ed.2d 198] ... (1974)." *Supra* at 288–290 (emphasis added, footnotes and certain situations omitted).

The Court of Appeals identically reasoned that *Mitchell* and *DelCostello* compelled the answer to the second *Ross* inquiry:

"*Mitchell* and *DelCostello* likewise control our decision as to whether plaintiffs' request for a jury trial meets *Ross* factor number two. If the suit against the employer is 'inextricably intertwined' with that against the union, then we cannot separate the remedies and the trial procedures in the two claims, declaring one set equitable and the other legal. *Cf., Phillips [v. Kaplus,]* 764 F.2d [807] at 814 [1985] (party may not transform equitable action into legal one merely because disposition will involve the distribution of assets). 'The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.' *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291.

Plaintiffs are attempting to use the fair representation claim to vacate the arbitration decision, and simultaneously to distance the claim from the request to nullify the arbitration. We cannot condone the inconsistency they request." *Supra* at 290–291.[13]

Finally, the Court of Appeals, as did Judge Weber in *King,* found the third *Ross* test equivocal, concluding "... that if juries can decide these claims adequately,

*Cox,* 607 F.2d at 143, so can judges." *Supra* at 291.

Here, where Plaintiff has pleaded a hybrid action seeking a panoply of equitable remedies including an order adjusting job classifications and wage rates, backpay, and attorney fees, there is no principled grounds for distinguishing *King* and *Leach.* And if Plaintiff attempts to do so on the ground that here there is no arbitration award to vacate the argument is wrong on its face under the core teaching of the Supreme Court in *DelCostello* that federal labor policy compels identical treatment of all breaches of the duty of fair representation, whether such breaches involve the presentation of a grievance at arbitration, withdrawal of a grievance prior thereto, or, as alleged here, "... a refusal to pursue it through even preliminary stages." *Supra* at 166, f. 16, 103 S.Ct. at 2291, n. 16.

The pending Motion is granted and the Plaintiffs' jury trial demand is stricken.

### ORDER

AND NOW, this 7th day of July, 1989, upon Motion of United Steelworkers of America to Strike Plaintiff's Demand for Jury Trial,

IT IS ORDERED that plaintiff's demand for a jury trial is stricken and that the above-captioned case shall be tried non-jury.

---

13. In *Leach,* the contract breach claim of one of the two plaintiffs had proceeded to arbitration. The Eleventh Circuit emphasized, however, that the relief sought was equitable even absent a request that the award be vacated. *Supra* at

289, f. 7. Indeed, it insisted that it was formulating a broad rule applicable across the entire spectrum of grievance outcomes. *Supra* at 289–90, f. 8.